NO. 07-01-061-CR



IN THE COURT OF APPEALS



FOR THE SEVENTH DISTRICT OF TEXAS



AT AMARILLO



PANEL B



FEBRUARY 19, 2002


______________________________



ROY CASTILLO
,




 Appellant


v.



THE STATE OF TEXAS, 




 Appellee

_________________________________



FROM THE 181ST DISTRICT COURT OF POTTER COUNTY;



NO. 40,537-B; HON. JOHN BOARD, PRESIDING


_______________________________



Before Boyd, C.J., Quinn and Johnson, J.J.

 Roy Castillo (appellant) was convicted by a jury of murder. Through seven issues,
he alleges that 1) the jury charge was improper, 2) by omitting an instruction on transferred
intent viz the lesser included offense of manslaughter, the trial court commented on the
weight of the evidence, 3) the evidence was legally and factually insufficient, and 4) the trial
court erred in admitting an autopsy report since it was hearsay. We affirm the judgment. 


Background


 After being involved in a fight at a local pool hall and its adjacent parking lot,
appellant and a friend drove to appellant's home to obtain firearms, namely a pistol-grip
shotgun and a 9mm pistol. Then they returned, with the weapons, to the scene of the fight. 
Upon arriving at same, the two exited their vehicle and began shooting at a black car. 
Inside the car sat various people including Ambrose Bustos (Bustos), one of the
participants in the earlier fight, and Julian Moreno (Moreno). The latter was struck in the
head by a bullet and killed. 

 When appellant later discovered that someone had died as a result of the shooting,
he threw the shotgun, the pistol, and its ammunition clip in T-Anchor Lake. In his
confession to police, appellant admitted firing his pistol at the car and throwing the
weapons in the lake. The weapons were later recovered from the lake.

 The State indicted appellant for murdering Moreno. One of its theories at trial
involved the concept of transferred intent. That is, the State attempted to show that though
appellant and his friend intended to kill Bustos, they succeeded in murdering Moreno. 
When both litigants rested their respective cases, the court charged the jury. Included
therein were paragraphs informing the jury that they could convict appellant for murder if
they found he intentionally or knowingly caused the death of Moreno or if he intended to
kill Bustos but actually killed Moreno. So too did it instruct the jury on the lesser included
offense of manslaughter. The jury eventually found appellant guilty of murder.


Issue One - Improper Jury Charge

 Appellant initially contends that the trial court's instruction concerning transferred
intent was improper. This is allegedly so for three reasons. First, the theory was not
mentioned in the indictment. Second, the trial court was obligated to inform the jury that
it "must find that any actions taken by [him] to show transferred intent must be done
knowingly and intentionally." And, third, while the instruction described the deadly weapon
with which appellant intended to kill Bustos, it failed to describe the particular deadly
weapon which resulted in Moreno's death. We overrule the contentions.

 As to the need to plead transferred intent in the indictment as a prerequisite to
mentioning it in the charge, we cite Dowden v. State, 758 S.W.2d 264 (Tex. Crim. App.
1988) and In re K.W.G., 953 S.W.2d 483 (Tex. App.-Texarkana 1997, pet. denied). Each
holds that the theory may be incorporated in the charge though omitted from the
indictment. Dowden v. State, 758 S.W.2d at 274; In re K.W.G., 953 S.W.2d at 488.

 As to the remaining contentions, we feel the need to quote pertinent aspects of the
indictment and charge. Through the former, the State accused appellant of "intentionally
and knowingly caus[ing] the death of . . . Julian Moreno, by shooting the said . . . Moreno
with a deadly weapon, . . . a firearm." Through the latter, i.e. the charge, the court
informed the jury that:

 [1] [n]ow, if you find from the evidence beyond a reasonable doubt that on
or about the 24th day of February, 1999, in Potter County, Texas, the
Defendant, ROY CASTILLO, did then and there intentionally or knowingly
cause the death of an individual, namely Julian Moreno, by shooting the said
Julian Moreno with a deadly weapon, to-wit: a firearm, you will find the
defendant guilty of murder. . . [;]


 [2] [y]ou are further instructed that a person is criminally responsible for
causing a result if the only difference between what actually occurred and
what he desired, contemplated or risked is that a different person was injured
harmed or otherwise affected. . .[; and]


 [3] [n]ow bearing in mind the foregoing instructions, if you believe from the
evidence beyond a reasonable doubt, that the defendant, ROY CASTILLO,
on or about the 24th day of February, 1999, in the County of Potter and State
of Texas, intending to cause the death of an individual, Ambrose Leon
Bustos, by shooting the said Ambrose Leon Bustos with a deadly weapon,
to-wit: a firearm, did then and there cause the death of an individual, namely,
Julian Moreno, by shooting the said Julian Moreno with a deadly weapon,
you will find the defendant guilty of the offense of murder and so say by your
verdict.


With these provisions in mind, we turn to the arguments.

 Regarding the supposed need to instruct the jury that the "acts taken by appellant
to show transferred intent must be done knowingly or intentionally," we see two possible
interpretations of the appellant's contention. (1) The first is that the court must inform the jury
that it can convict only if the actions directed towards the individual whom appellant
actually wanted to kill were taken with the requisite mens rea. Here, the trial court did just
that. It informed the jurors that they could convict only if appellant caused the death of
Moreno while "intending to cause the death of an individual, Ambrose Leon Bustos . . . ." (2) 
 (Emphasis added). 

 The second interpretation of appellant's argument involves the supposed need to
state that appellant acted with a particular mens rea towards Moreno as he caused the
death of Moreno while actually trying to kill Bustos. We find this proposition meritless
based upon a plain reading of §6.04(b) of the Penal Code. Though euphemistically called
"transferred intent," the concept espoused in that section of the Code does not deal with
intent or any other mens rea. Rather, it depicts an effort by the legislature to criminalize
an act which resulted in injury or harm to someone other than the person to whom the
injury or harm was actually directed. As much can be garnered from the wording of the
statute. In stating that one "is nevertheless criminally responsible for causing a result if
the only difference between what actually occurred and what he [intended, knew or risked]
is that a different person was" harmed or injured, the legislature was addressing the results
of the conduct. Tex. Pen. Code Ann. §6.04 (b)(2) (emphasis added). That is, it was telling
the public that it did not matter who was hurt or affected by the act. As long as the
accused intended, knew or risked hurting or affecting a particular person and someone was
affected, the accused would be culpable for the crime he tried to commit. So, acting with
a particular mens rea viz-a-viz the actual victim was and is unimportant, and such a mens
rea need not be alleged nor proved. Indeed, if this were not so, and if the State were
required to allege and prove that the accused acted with a particular mens rea towards the
ultimate victim, then their concept of transferred intent would be superfluous. (3) 

 Finally, we address appellant's contention about describing the nature of the deadly
weapon used to cause the death of Moreno. He believes that it was not enough to simply
allude to it as a deadly weapon; this was so despite the trial court's description of it as a
"firearm" when alluding to the deadly weapon with which appellant intended to kill Bustos. 
This argument also fails for reasons similar to those mentioned in the immediately
preceding paragraph. Again, the gist of §6.04(b) involves criminalizing conduct resulting
in someone's injury or harm, irrespective of whether the person harmed or injured was the
intended victim. And, in telling the jury what they must find to convict when §6.04(b) is
involved, the trial court need only allude to the actual victim as the person who suffered
harm or injury meant for another. The expressed wording of §6.04(b) requires nothing
more when referring to the actual victim. So, the trial court at bar was not obligated to tell
the jury that to convict appellant, it had to find that he used a "firearm" to kill Moreno; this
is so since the nature of the deadly weapon had already been described in referring to the
acts of appellant which were directed at Bustos.

Issue Two - Comment on the Evidence


 Next, appellant alleges that the trial court failed to incorporate the concept of
transferred intent into its instruction on the lesser included offense of manslaughter. And,
because it did not, the instruction given was a comment on the evidence. We disagree and
overrule the point.

 First, it has been held that the failure to charge the jury on transferred intent when
submitting an instruction on manslaughter is not a comment on the weight of the evidence. 
Juarez v. State, 886 S.W.2d 511, 515 (Tex. App.-Houston [1st Dist.] 1994, pet. ref'd). 
Second, to the extent that the case cited by appellant, Garrett v. State, 624 S.W.2d 953
(Tex. App.-San Antonio 1981), rev'd on other grounds, 642 S.W.2d 779 (Tex. Crim. App.
1982), suggests otherwise, we note that the Garrett holding was dependent upon the
nature of the charge given by the trial court. There, "the State's theory [regarding
manslaughter] relied upon transferred intent." Id. at 957. Thus, the appellate court
concluded that the jury had to be told about that issue via the charge.

 Here, reference to manslaughter in the charge did not implicate transferred intent. 
That is, the jury was not told that it could find appellant guilty of same, if it concluded that
his reckless conduct was directed at one person but resulted in injuring someone else. (4) 
Instead, the trial court instructed that appellant could be found guilty of manslaughter if
appellant recklessly discharged a firearm "in the direction of" the particular decedent and
the discharging of the weapon caused the death of the decedent. In the trial court's
focusing upon appellant's alleged reckless discharge of the gun towards the decedent as
opposed to some third party whom appellant missed, there was no need to inform the jury
that appellant could be held responsible for the crime even though he missed this
unmentioned third party and struck the decedent. Simply put, the circumstances described
in the application paragraph at issue had nothing to do with transferred intent. So, Garrett
was and is inapposite. 

Issues Four, Five, and Six - Sufficiency of the Evidence

 Appellant next challenges the legal and factual sufficiency of the evidence
supporting the verdict. He claims that the evidence was insufficient to demonstrate that
he intentionally and knowingly 1) shot at Bustos, 2) tried to cause the death of Bustos, and
3) caused the death of Moreno. We overrule the contentions.


 Standard of Review

 The standards of review applicable to questions of legal and factual sufficiency are
well-settled and need no explanation. We find it adequate to merely cite the parties to King
v. State, 29 S.W.3d 556 (Tex. Crim. App. 2000) and Clewis v. State, 922 S.W.2d 126 
(Tex. Crim. App. 1996). (5) 

 Application of Standard

 A person commits murder if he intentionally or knowingly causes the death of an
individual. Tex. Pen. Code. Ann. §19.02(b)(1)(Vernon 1994). Furthermore, a person acts
intentionally or knowingly with respect to a result of his conduct when he is aware that his
conduct is reasonably certain to cause the result. Tex. Pen. Code. Ann. §6.03(a) and (b)
(defining culpable mental states of intentionally and knowingly). Yet, as alluded to in our
discussion of the preceding issue, one may still be held liable for murder if he kills
someone other than the person he intended to kill. See Tex. Pen. Code Ann. §6.04(b)(2)
(discussing this concept). In that regard, all the State need prove is that the only difference
between what actually occurred and what he intended or knew would occur is that he
caused the death of someone other than the one he tried to kill. Id. With this said, we now
peruse the evidence before us.

 Of record, we find evidence illustrating that: 1) appellant and Moreno were both
present at the bar the night of February 24, 1999; 2) each was there with a group of friends
and/or family members; 3) Junior, one of appellant's friends, was hit in the head with a
billiard ball by Bustos, one of the individuals in Moreno's group; 4) the fight in the pool hall
spilled out into the parking lot, where a number of vehicles were damaged, 5) appellant's
car was damaged by Bustos; 6) appellant left the bar with Junior and proceeded to
appellant's house; 7) appellant retrieved a shotgun and pistol from underneath his bed and
gave the shotgun to Junior; 8) appellant and Junior then returned to the bar; 9) the
appellant recalled seeing "people around a black car;" 10) appellant drove around to the
back of the establishment; 11) at the time, the victim and Bustos were in a black car along
with four other people; 12) when the appellant drove up, people were attempting to enter
the black car; 13) the appellant and Junior exited their vehicle, aimed their weapons at the
black car, and began shooting; 14) after discharging the weapons, the two drove back to
appellant's house and hid the guns; 15) that night Moreno died of a bullet wound to the
head; 16) the bullet removed from his head was of the same caliber as the ammunition
fired from appellant's pistol; 17) Bustos, who allegedly hit Junior with a billiard ball, had
been sitting in the passenger seat of the car at the time of the shooting; 18) as a result of
the shooting, the window where Bustos had been sitting was shot out; 19) Bustos' window
was the only window shot out; 20) the black car did not have tinted windows; 21) when the
shooting began at least one door of the black car was open; 22) the interior light of the car
had also been in working condition that night; 23) the parking lot was well lit at the time of
the shooting; 24) Bustos saw the shooters kneeling and aiming at the car; 25) when
appellant discovered that someone had died as a result of the shooting he threw the
weapons in T-Anchor Lake; and 26) appellant later confessed to shooting at the car in the
parking lot and throwing the weapons in the lake. From this, a jury could conclude, beyond
reasonable doubt, that appellant caused the death of Julian Moreno, although he intended
to cause the death of Ambrose Leon Bustos. That is, a rationale jury could have
reasonably inferred that appellant intended to shoot and kill Bustos in retaliation for the
earlier happenings, saw him in the car, fired, and instead killed Moreno. Thus, appellant's
conviction for murder is supported by legally sufficient evidence. 

 That the evidence of guilt was not free of contradiction, that appellant denied
intending to kill anyone, that he denied knowing anyone was in the black car, and that the
credibility of witnesses may have been subject to question does not require us to conclude
that the verdict was factually insupportable. Those circumstances merely create issues for
the jury to resolve. And, based upon our review of the entire record, we cannot say that the
verdict was clearly wrong or manifestly unjust. Thus, the conviction also enjoyed the
support of factually sufficient evidence.

Issue Seven - Admission of the Autopsy Report

 Lastly, appellant claims that the trial court erred in admitting an autopsy report into
evidence. It allegedly did so because the report was hearsay and the State failed to lay
a proper predicate for its admission as a business record under Texas Rule of Evidence
803(6). We overrule the point.

 Irrespective of whether the State presented evidence satisfying the elements for
admitting a document as a business record, the trial court had before it an autopsy report. 
This is of significance for such a report has been held to be, as a matter of law, a public
record. Butler v. State, 872 S.W.2d 227, 237-38 (Tex. Crim. App. 1994), cert. denied, 513
U.S. 1157, 130 L.Ed. 2d 1079, 115 S.Ct. 1115 (1995). And, as a public record, it is
admissible as an exception to the hearsay rule. Id. at 238. So, because the standard of
review is one of abused discretion, Wyatt v. State, 23 S.W.3d 18, 29 (Tex. Crim. App.
2000), and the report was admissible irrespective of Rule 803(6), we conclude that the trial
court did not err in admitting it. See Romero v. State, 800 S.W.2d 539, 543 (Tex. Crim.
App. 1990) (holding that an appellate court may affirm a trial court's decision to admit
evidence for reasons other than those mentioned to the court). 

 Accordingly, we affirm the judgment of the trial court.


 Brian Quinn

 Justice

Publish.
1. What appellant means when alluding to the "actions taken by Appellant to show transferred
intent" is unclear. Thus, we are left to interpret the nature of his argument.
2. By using the word "intending" in the application paragraph and mentioning no other mens rea, it could
be said that the trial court enhanced the burden of the State or restricted the jury's ability to convict for murder. 
For instance, the omission denied the factfinder the opportunity to convict if appellant acted "knowingly." And,
such a mind set is sufficient to secure a conviction for murder. Tex. Pen. Code. Ann. §19.02(b)(1)(Vernon
1994) (stating that a person commits murder if he intentionally or knowingly causes the death of an individual).
3. For instance, if the State was obligated to prove that appellant intended to cause the death of Moreno
while intending to kill Bustos, there would be no need to even refer to Bustos. Intending to cause the death
of Moreno and causing it would be enough to warrant conviction. 
4. Manslaughter implicates the mens rea of recklessness. See Tex. Pen. Code Ann. §19.04 (Vernon
1994) (stating that a person commits manslaughter if he recklessly causes the death of an individual).
5. We would note, however, that in urging legal insufficiency, the appellant should focus upon the
evidence appearing of record and explain why it was not enough to support the verdict. This is so because
we cannot reverse unless we explain why that evidence was deficient. In the interest of T.M., 33 S.W.3d 341,
349 (Tex. App.-Amarillo 2000, no pet.). It is not enough for us to merely conclude that the evidence was
wanting. So, an appellant should do more than simply allude to the evidence that favors an acquittal. Rather,
he should undertake to explain why the evidence purporting to favor conviction does not.